UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| OTIS GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case. No. 04-2503 D |
| ) | |
| AETNA LIFE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER DENYING THE MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT (Doc. no. 27); ORDER DENYING THE MOTION OF DEFENDANT FOR ENTRY OF JUDGMENT (Doc. no. 29)

Before the Court are the motions of Otis Griffin ("Plaintiff") for summary judgment and Aetna Life Insurance Company ("Defendant") for entry of judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for entry of judgment.

I.   FACTUAL BACKGROUND[1]

Plaintiff worked as a supervisor for Goodyear Tire and Rubber Company ("Goodyear") prior to suffering an on-the-job injury in 1992. After being injured, Plaintiff was evaluated by a doctor who diagnosed him with moderate degenerative disease of the lumbar spine. Plaintiff could not return to work as a result of his injury. Beginning April 1, 1992, and continuing until August 31, 2002, Plaintiff received long term disability income benefits ("LTD benefits") pursuant to

---

[1] The following facts are taken from the memoranda in support of and in opposition to Plaintiff's motion for summary judgment and Defendant's motion for entry of judgment and from the administrative record.

Goodyear's Long Term Disability Plan (the "Plan").

Defendant determines whether claimants are eligible for benefits pursuant to the Plan and makes payments accordingly. In July 2002, Defendant terminated Plaintiff's LTD benefits. Defendant premised its decision on the opinion of Dr. Bernard Stevens. Defendant asked Dr. Stevens to review Plaintiff's records to make a determination as to his disability status. Dr. Stevens noted in his review that Plaintiff's file did not contain "much in the way of diagnostic testing. . . ." More specifically, Dr. Stevens noted that the record did not contain a "plain lumbar spine x-ray report. . . ." Dr. Stevens examined the medical records generated by Plaintiff's treating physicians, who included Drs. James McAfee, John Jenkins, John Hopkins, Jeremiah Upshaw, David Bell, and Chiropractor Curtis Damien. Dr. Stevens indicated that Plaintiff's medical reports noted that Plaintiff walked normally and did not have any motor, reflex, or sensory deficits. Dr. Stevens further relied on a cardiac stress test dated June 24, 1999, which in Dr. Stevens' opinion established that Plaintiff could exercise up to 10.2 METS. Based on his assessment of the medical reports, Dr. Stevens opined that Plaintiff was capable of medium work capacity. From his examination of Plaintiff's medical record, Dr. Stevens further completed a Physical Capacities Evaluation ("PCE"), wherein he determined that Plaintiff could sit, stand, and walk for up to six hours per day, two hours on a continuous basis. Dr. Stevens opined that Plaintiff could lift and carry up to fifty pounds and frequently push, pull, stoop, kneel, balance, and crawl. Dr. Stevens' report and evaluation were sent to Plaintiff's physicians. Drs. Jenkins and Bell signed and returned forms indicating that they agreed with Dr. Stevens' findings. Based on Dr. Stevens' report and a Vocational Assessment, Defendant terminated Plaintiff's LTD benefits, concluding that Plaintiff could work at a sedentary to medium exertion level and was qualified to perform such jobs as supervisor, physical education instructor,

or production planner.

Plaintiff appealed Defendant's determination. In support of his appeal, Plaintiff submitted a medical report from Dr. Michael Hellman, who examined Plaintiff in August 2002. Dr. Hellman opined that Plaintiff could stand or walk for less than three hours a day, could not push/pull more than fifteen pounds, could only occasionally lift/carry fewer than ten pounds, and could sit for less than three hours a day. Dr. Jenkins rescinded his agreement of Dr. Stevens' findings, stating that he was not a back specialist and did not make disability ratings.

On December 18, 2002, Defendant reaffirmed its decision to terminate Plaintiff's LTD benefits based on the recommendation of Dr. Wilhelmina Korevaar. Dr. Korevaar reviewed Plaintiff's medical records, including the submissions made by Plaintiff subsequent to Defendant's initial determination. Dr. Korevaar opined that Dr. Hellman's findings were internally inconsistent with Plaintiff's medical records and inconsistent with Plaintiff's activities as documented in the records. Dr. Korevaar agreed with Dr. Stevens' conclusion that the record did not establish that Plaintiff had sought consistent treatment for back pain.

Plaintiff filed a second appeal as to Defendant's decision to terminate his LTD benefits. Defendant again affirmed its decision. On July 6, 2004, Plaintiff initiated the instant action, asserting that Defendant violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. On January 14, 2005, Plaintiff filed a motion for summary judgment and Defendant filed a motion for entry of judgment.

## II.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. In other words, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. As such, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### III. ANALYSIS

Plaintiff brings the instant action pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA. Plaintiff contends that he was denied a full and fair review of his claim for LTD benefits. Defendant contends that the record supports its findings as to Plaintiff's disability sufficient to warrant the entry of judgment in its favor. As discussed below, the Court finds that a genuine issue of material fact exists as to whether Plaintiff is totally disabled pursuant to the Plan.

4

When reviewing a claim raised pursuant to 29 U.S.C. § 1132(a)(1)(B), the "deferential arbitrary and capricious standard of review is appropriate . . . when the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991) (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989)). "[A]n ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" Id. at 984 (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988)).

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, [courts] must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.

McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003) (quoting Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir.2000)).

The arbitrary and capricious deferential review does not translate to no review, however, and the "'deference need not be abject.'" Id. at 172 (quoting Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir.2001)). District courts must review the administrative record to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations. Id.

> This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence--no matter how obscure or untrustworthy--to support a denial of a claim for ERISA benefits.

Id. When considering whether the plan administrator acted arbitrarily or capriciously, courts should

consider as a factor the conflict of interest created by the dual roles the plan administrator holds as the decision maker and as the insurer/payer of benefits. Miller, 925 F.2d at 984.

Both parties agree that the arbitrary and capricious standard of review applies. Thus, the Court must determine whether a genuine issue of material fact exists as to whether Defendant's decision to terminate Plaintiff's LTD benefits was arbitrary and capricious. The Plan provides that "written proof of the continuance of such disability must be furnished to" Defendant as reasonably required. The Plan further provides that

> "Total disability" or "totally disabled" means, during the twelve month qualifying period and thereafter during any one period of disability, that the employee is unable, solely because of disease, accidental bodily injury or a pregnancy-related condition to work at any reasonable occupation.

"Reasonable occupation" is defined under the Plan as:

> any gainful activity for which the employee is, or may reasonably become, fitted by education, training, or experience, and in which other people of similar background are actually employed as their principal means of support.

In determining that Plaintiff was ineligible for LTD benefits, Defendant relied on 1) Dr. Stevens and Dr. Korevaar's reports generated from their review of Plaintiff's medical files, 2) the PCE completed by Dr. Stevens, and 3) a vocational analysis completed based on Dr. Stevens' report. Thus, it can be deduced that Defendant relied very heavily on the recommendations of Dr. Stevens.

Dr. Stevens evaluated the medical records available to him, which included reports generated by doctors who had treated Plaintiff. These medical records indicated that an Independent Medical Exam ("IME") of Plaintiff was conducted on January 14, 1993. The IME states that Plaintiff's "back reveals marked flattening of the normal lordotic curve. This is a physical finding often seen in patients who have chronic back pain and muscle spasm." The doctor who conducted the IME

6

concurred with Dr. McAfee's "diagnosis of chronic lumbrosacral strain superimposed on preexisting degenerative changes in the lower lumbar spine. . . ." The doctor noted that Plaintiff's diagnosis necessitated lifting, standing, and sitting restrictions.

Dr. McAfee, Plaintiff's treating physician, submitted annual updates to Defendant through January 2001. Dr. McAfee's January 2001 statement declared that Plaintiff suffered from degenerative lumbar disc and joint disease. The medical record further indicated that Plaintiff had been under the care of a chiropractor since 1996 for lower back pain. David Kelling, one of Plaintiff's chiropractors, wrote a letter which was included in Defendant's file. Kelling opined that he had treated Plaintiff on August 7, 2002, for lower back pain and that Plaintiff's x-rays indicated that he suffered from a "chronic degenerative nature" to his lower back. Other doctors' reports which were reviewed by Defendant included notations to Plaintiff's back condition. These notations included such statements as "in for lower back pain. . . . 'Back trouble for years.'" Moreover, Plaintiff's medical records indicate that he took Celebrex for back pain.

Dr. Stevens' report indicated that he relied on a cardiac stress test performed in 1999, which indicated that Plaintiff could exercise at a level equivalent to heavy work. The Court's review of Plaintiff's cardiac stress test and the medical record indicates, however, that Dr. Bell terminated the test because Plaintiff experienced lightheadedness and had a poor blood pressure response. Moreover, it is unclear why this is relevant to a determination that Defendant was disabled due to a back condition. The Court makes no finding as to the credibility of Dr. Stevens' evaluation except to note that Dr. Stevens never physically evaluated Plaintiff.

Dr. Korevaar reviewed Plaintiff's medical records after Plaintiff appealed Defendant's decision. Dr. Korevaar concurred with Dr. Stevens' evaluation of the record. Dr. Korevaar

7

additionally gave her opinion of Dr. Hellman's findings regarding Plaintiff's condition. Dr. Hellman examined Plaintiff in August 2002 and opined that Plaintiff could not stand or walk for more than three hours in a day, could only push or pull no more than fifteen pounds, could occasionally lift or carry fewer than ten pounds, and could only sit for less than three hours in a day. Dr. Korevaar believed that Dr. Hellman's findings were inconsistent with the remainder of the Plaintiff's medical records. Like Dr. Stevens, Dr. Korevaar did not perform a physical examination of Plaintiff.

The Court recognizes that Defendant based its decision to terminate Plaintiff's LTD benefits on the opinions of two doctors and a PCE of Plaintiff's abilities that was premised on Dr. Stevens' report. Based on the Court's review of the record and the fact that Defendant is the decision maker and the insurer, however, the Court finds that a genuine issue of material fact exists as to whether Defendant's reason to terminate Plaintiff's LTD benefits was reasonable based on the evidence. Thus, a question exists as to whether the decision was arbitrary or capricious. Accordingly, the Court **DENIES** both Plaintiff's and Defendant's motions.

## IV.   CONCLUSION

For the aforementioned reasons, the Court denies Plaintiff's motion for summary judgment. Likewise, the Court denies Defendant's motion for entry of judgment.

**IT IS SO ORDERED** this _25th_ day of April, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 35 in case 2:04-CV-02503 was distributed by fax, mail, or direct printing on April 26, 2005 to the parties listed.

---

James R. Becker
CRONE & MASON, PLC
5100 Poplar Ave.
Ste. 3200
Memphis, TN 38137

Kenneth A. Weber
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Nashville
211 Commerce St.
Ste. 1000
Nashville, TN 37201

Honorable Bernice Donald
US DISTRICT COURT